IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

FLOYD J.[1]

      Plaintiff,

  vs.

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

Case No. 6:19-cv-00244-AA
**OPINION AND ORDER**

AIKEN, District Judge:

      Plaintiff Floyd J. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). This Court has jurisdiction under 42 U.S.C. §§

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

405(g) and 1383(c)(3) of the Social Security Act ("Act").  For the reasons set forth below, the Court REVERSES and REMANDS for further proceedings.

## BACKGROUND

On March 9, 2015, plaintiff protectively applied for a period of disability and DIB.   Plaintiff alleged disability beginning May 15, 2012 due to a L5-S1 crush in his back, depression, post-traumatic stress disorder ("PTSD"), panic attacks, muscle weakness in his legs, sleep and appetite disturbance, decreased energy, lack of concentration, and panic attacks.  Tr. 197.  Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff appeared and testified at a hearing before an administrative law judge ("ALJ") on December 14, 2015.  At the hearing, plaintiff was represented by an attorney.  Plaintff, a vocational expert ("VE"), and a medical expert ("ME") offered testimony.  Following the hearing, the ALJ issued a written decision find plaintiff not disabled under the act.  On February 2, 2018 the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed a complaint in this Court seeking review of the ALJ's decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Baston v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, the district court must "examine the administrative record as a whole, weighing both the evidence that supports and detracts" from the ALJ's decision. *Gonzales v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion.  *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).  Finally, a court may not reverse an ALJ's decision on account of an error that is harmless.  *Id.* at 1055–56.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## THE COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(l)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity;' (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

The ALJ performed the sequential analysis, noting that plaintiff met the insured status requirements of the Act through December 31, 2015. Tr. 22. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity between his onset date and the date last insured. *Id.* At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease ("DDD") with spinal stenosis, status post spinal fusion, and PTSD. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R Part 404, Subpart P, Appendix 1. *Id.* at 23.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that through the date last insured, plaintiff retained the RFC to perform light work, as defined in in 20 CFR 404.1567(b), with additional limitations:

> [H]e could perform tasks involving no more than frequent balancing, stooping, or crouching. He could occasionally kneel, crawl, or climb ladders, ropes, or scaffolds. Due to pain, side effects of prescribed medication, and mental impairments, he was limited to unskilled tasks involving no more than frequent interactive contact with co-workers, supervisors, or the general public.

Tr. 24.

At step four, the ALJ found that plaintiff has no past relevant work. *Id.* at 27. At step five, the ALJ considered plaintiff's age, education, work experience, and RFC and found that there were jobs existing in significant numbers in the national economy that plaintiff could perform such that plaintiff could sustain substantial gainful employment despite his impairments. Specifically, the ALJ found that plaintiff could perform representative occupations like small products assembler, electronics worker, and price marker. *Id.* at 28. Accordingly, the ALJ found that plaintiff was not disabled under the Act. *Id.* at 29.

## DISCUSSION

Plaintiff contends that the ALJ made two errors that merit remand. First, the ALJ's finding that plaintiff did not medically equal a disorder of the spine under 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04 was not supported by substantial evidence. Second, the ALJ improperly evaluated plaintiff's RFC by erroneously (1) finding that plaintiff improved, (2) discounting plaintiff's subjective symptoms testimony, (3) evaluating Veterans Administration's ("VA's") disability findings and two Compensation and Pension examinations ("C&Ps"), (4) social functioning, and (5) concentration, pace, and persistence. The Court addresses each issue in turn.

/ / /

I.    *Step Three Analysis*

As noted above, the ALJ found that plaintiff's back impairment did not equal a disorder of the spine under 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04.  The Court finds that the ALJ did not err in this finding.

At step three, the ALJ determines whether one or more of the claimant's severe impairments meets or medically equals one of the presumptively disabling impairments listed in 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is listed and meets the duration requirement of twelve or more months or is equal to a listed impairment, then the claimant is found disabled regardless of "age, education, and work experience."  *Id.* at §§ 404.1520(d), 416.920(d).

"[F]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is medically equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis added); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).  Equivalence is based solely on medical evidence and the ALJ "will not substitute [claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."  20 C.F.R. §§ 404.1529(d)(4), 416.929(d)(4).

Here, the ALJ gave specific attention to whether plaintiff's lower back impairment met or equaled a disorder of the spine "resulting in compromise of nerve

root (including the cauda equine) or the spinal cord." 20 C.F.R pt. 404, subpt., P, app. 1 § 1.04. To meet this listing, plaintiff must also show,

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id*. at § 1.04(A).

The Commissioner asserts that a reasonable mind could agree with the ALJ's finding. Def.'s Br., 1. The thrust of the Commissioner's argument is that plaintiff retained significant functionality despite his impairments, which forecloses meeting or equaling a listed condition. *See*, *Id*. at 3-4. I agree.

Medical evidence supporting of the ALJ's finding included radiologist notes from an MRI analysis in February 2012. There the radiologist found "mild" stenosis and said, "clinical correlation" was needed "to determine the significance." Tr. 438-39. Further, on December 18, 2014, a nurse practitioner's assessment for plaintiff's C&P found that his bulging disc did not impinge on plaintiff's spinal cord or nerve roots. *Id*. at 604. In a subsequent C&P on October 14, 2014, plaintiff's leg strength was 5/5 and his straight-leg test ("SLR") test was negative. *Id*. at 612-13. The ALJ also observed that although the ME thought plaintiff came "very close to equaling," plaintiff retained functioning and seemed to have improved. *Id*. at 26.

As an initial matter, plaintiff argues that the ALJ failed provide sufficient reasoning at step three. However, the Commissioner correctly points out that an ALJ's reasoning need not appear at step three so long as the finding is supported by

substantial evidence elsewhere in the opinion.  Def.'s Br., 5 (citing *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001)).

More substantively, plaintiff argues that the medical record lacks the evidence of improvement that plaintiff identifies as the core of the ALJ's § 1.04A finding.  First, plaintiff asserts that the ALJ mischaracterized testimony by the ME, Dr. Maimon, regarding plaintiff's MRIs and improvement.  Second, plaintiff argues that the ALJ failed to address evidence indicating that plaintiff's conditions persisted or even worsened.  Pl.'s Op. Br., 12-13 (quoting *Lewis*, 236 F.3d at 512 ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.")).  Because the ME initially testified that plaintiff was borderline to equaling, plaintiff reasons that medical evidence that contradicts improvement, or went unconsidered, merits a finding of equaling.

The Commissioner argues persuasively that plaintiff's argument is too general and that plaintiff has failed to provide medical evidence of equaling each listing requirement.  "Medical equivalence must be based on medical findings. A generalized assertion of functional problems is not enough to establish disability at step three." Def.'s Br., 4 (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal quotation marks omitted)).  Moreover, "[l]isted impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy*, 738 F.3d at 1176 (quoting *Zebley*, 492 U.S. at 532).  None of plaintiff's evidence negates the medical examinations cited by the ALJ which demonstrate some degree of retained strength

and functionality.  The evidence of retained leg strength and negative SLR testing from plaintiff's 2014 C&P was substantial insofar as it demonstrated that further inquiry into the severity of plaintiff's impairments was necessary.

This Court will reach the remaining issues raised by plaintiff in step three in the RFC discussion below.

II.    *Residual Functional Capacity*

The RFC is "the most [plaintiff] can still do despite [plaintiff's] limitations" and, the Commissioner will base RFC findings on "all relevant evidence" in the record. 20 C.F.R. § 404.1545(a).  Plaintiff argues under several assignments of error that the ALJ erroneously found improvement in plaintiff's condition during the period under review.  The Court construes this argument to mean that the ALJ failed to reconcile the narrative of improvement with evidence of the waxing and waning nature of plaintiff's lower back and leg pain.  In other words, flaring symptoms may result in disability by preventing work on a regular and continuing basis even if plaintiff retains some strength and functionality during periods of lesser symptoms. Additionally, plaintiff contends that the ALJ erred in (1) discounting plaintiff's subjective symptom testimony, (2) evaluating evidence of disability from the VA, (3) assessing plaintiff's social functioning, and (4) finding moderate limitations in concentration, persistence, and pace.  Each assignment of error is discussed in the turn below.

/ / /

/ / /

Page 9 – OPINION AND ORDER

A.    *Waxing and Waning*

The Court is persuaded that the ALJ's insufficient discussion of plaintiff's waxing and waning symptoms is reversible error.  The Commissioner assesses all evidence of physical and mental limitations in determining plaintiff's RFC for work activity on a regular and continuing basis.  The Social Security Administration ("SSA") interprets "regular and continuing basis" to mean "8 hours a day, 5 days a week, or an equivalent work schedule."  SSR 96-8, 1996 WL 374184 at *2.  An ALJ must "also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id*. at *7.

The record shows that plaintiff' severe lower back-related symptoms flared with regularity throughout the period under review.  Plaintiff testified that in 2017 his lower back condition was worse some days than others and forced him to remain in bed for about half the day during six to seven days each month.  In response to questioning, plaintiff noted that the condition was "about the same" in 2015.  Tr. 46-47.  The periodic appointments for severe lower back and leg pain, weakness, and numbness are consistent with plaintiff's testimony that the symptoms fluctuate.

The following is a partial list of medical examinations for severe lower back-related symptoms.  Plaintiff sought medical care for lower back and leg pain multiple times in 2012, reporting pain on a one to ten scale of nine on January 25, 2012 and eight on March 27, 2012.  *Id*. at 311-19.  In July and September of 2013, plaintiff fell and suffered severe lower back and leg pain.  *Id*. at 998, 1007.  The September fall resulted from plaintiff's left leg "giving out" and the care provider noted that plaintiff

had a history of such falls. *Id.* at 998. On July 3, 2013, plaintiff's SLR was positive and he reported numbness in his right leg. *Id.* at 1009. On March 24, 2014, plaintiff visited the emergency room with lower back pain radiating down his left leg that had been progressing over three to four days, muscles spasms in left calf, and "inability to bear any weight" on his left leg. *Id.* at 995. The doctor also noted that Norco was not controlling the pain. *Id.* On March 31, 2014, plaintiff's SLR was again positive. *Id.* at 990. Plaintiff's symptoms continued through April 2014 and he was seen several more times. *Id.* at 878-993. An October 14, 2014 examination documented "flare-ups" as impacting the functionality of plaintiff's spine. Plaintiff reported muscle spasms three to four times per week with "moving wrong or overuse" triggering flare-ups. *Id.* at 695. On November 4, 2014, plaintiff visited the emergency room with "acute exacerbation" or lower back pain. *Id.* at 664. On January 12, 2015, plaintiff visited the emergency room after another fall with sharp lower back pain exacerbated by certain movements. *Id.* at 779. By January 28, 2015, plaintiff's pain persisted with a score of nine. *Id.* at 777.

The Commissioner's focus on improvement and instances of retained functionality is, standing alone, legally insufficient to discount the clear evidence of ongoing flare-ups of severe lower back-related symptoms. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable

of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

Here, the ALJ found that plaintiff's physical and mental symptoms were most severe following the death of his girlfriend in May of 2012 but that the record indicated that plaintiff "ultimately improved." Tr. 27. As plaintiff notes, the evidence proffered for improvement was thin. The evidence that the ALJ directly tied to improvement was substantially limited to plaintiff's PTSD and associated mental symptoms. *Id.* Specifically, the ALJ noted that plaintiff was walking and weightlifting for a couple of hours per day in early 2013 and went on a few dates in 2014. *Id.*

The Commissioner argues that this evidence demonstrates that the severe impairments documented immediately after plaintiff's girlfriend's death did not persist throughout the period under review. Def.'s Br., 8. The Court agrees with plaintiff that it is unclear how either of these minimal details evidence clear improvement when viewed against the record as a whole. Instead, both details are consistent with plaintiff's own account of his symptoms, which do not prohibit him from participating in some everyday activities.

The ALJ's discussion of plaintiff's lower back-related symptoms centered on the medical opinions of the state agency non-examining physicians and the ME as well as the 2014 C&P at the VA. An ALJ's evaluation of medical opinions must be supported by substantial evidence. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings."
*Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he
ALJ must do more than offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the doctors', are correct." *Reddick*,
157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Here, the ALJ's reasons for weighting the medical opinions on the state agency
non-examining physicians were sparse and partially inaccurate. State non-
examining physicians reviewed the record in May and October 2015 and opined that
plaintiff was capable of light work with "certain postural limitations." Tr. 26. The
ALJ gave the opinions significant weight, noting that a finding of light work would
sufficiently reconcile medical evidence of back symptoms with evidence that plaintiff
could "ambulate without difficulty." *Id*. (quoting Tr. 650 (internal quotations
omitted)).

However, the state non-examining physicians' opinions regarding light work
do not release the ALJ from the requirement to address inconsistent evidence in the
record, notably plaintiff's waxing and waning symptoms. This point must be
emphasized here where the ALJ's failure to detail the factors leading to an attribution
of significant weight and the presence of contradictory evidence cut against affording
these opinions much significance. Most strikingly, the ME questioned the RFC
opinions of the state agency non-examining physicians. *Id*. at 60. The ME's doubt
strongly calls into question the ALJ's heavy reliance on the non-examining physicians
for the proposition that plaintiff is capable of light work.

The ME's own opinion regarding plaintiff's condition was, as the Commissioner concedes, equivocal. *See* Def.'s Br., 8. Because both parties isolate partial statements of the ME, quoting the ME at length helps clarifies this discussion:

> [I]t's kind of a borderline case from a medical standpoint for my, in my opinion and the most evidence in favor for this gentleman are the MRIs that I read showing either neuro impingement or whatever the other verb was -- possibly compressing the Sl nerve. The conflict in the straight-leg raising by two expert physicians in the record, is a bit discerning. I don't think the patient's able to do everything that the two RFCs that are in the records state. And to be frank about it, I asked that question about the psychological problems, I'm not a psychiatrist, it's not for me to testify about psychological difficulties, but apparently this gentleman has had certainly PTSD and depression. And you know, my medical feeling is that probably throws him over the line for equaling. . . . He seems to function fairly well according to the record, but according to what he stated in his testimony he's having a lot of trouble and the MRIs do provide evidence that he's got real pathology. So he comes pretty close to equaling 1.04(A) medically and psychologically if he has anything, and again that's not for me to say, but I keep talking, that might make a difference in how you decide the final determination in this case. . . . I just feel the findings on the MRIs are significant again, no EMG so -- and he really -- it's a very difficult case from a medical standpoint to state whether in fact this man equals -- he doesn't meet listings, but he's on right on the borderline but you make a very good point and you know most of the record is consumed with his problems but maybe you know, he's certainly, he's lost a lot of weight recently and he is as you say he's doing something outside and he's tanned and I personal subject it says he's taking something for erectile dysfunction which means he's at least having sexual relations at least once a week according to the records. So he's not totally incapacitated there. So, you know I don't know what he's doing on the outside and I don't know what he's actually doing. I just – that's not -- except for what you read, I didn't see a whole lot in the record. So I'm not being very helpful in my opinion in this case because there is real pathology, but he's doing better. So, you know I'm -- again, your point is well taken and if he's outside working he certainly could do light work and that's what the people in the records say he can do.

Tr. 60-62. The ME did not, as the ALJ and Commissioner assert, opine that plaintiff had improved. Rather, the ME admitted that plaintiff *may* have improved but he

could not make that conclusion without speculation. When asked by plaintiff's counsel whether the medical record suggested that plaintiff would have two or more absences from work each month, the ME also responded that it was possible, but he could only speculate. *Id.* at 66. The plainly inconclusive language of the ME's testimony renders it ineffectual as strong support for either party's position.

The remaining medical evidence cited by the ALJ referred to retained functionality. All evidence cited came from one examination by Mical Dutson, NP, during plaintiff's 2014 C&P. *Id.* at 26. That examination, discussed above in the Listed Impairment section, documented 5/5 leg strength, no muscle atrophy or radicular pain, and reliance over-the-counter pain killers. Mr. Duston also noted on a form that plaintiff's lower back pain would not limit his ability to work. *Id.* at 615. The Commissioner supplemented the ALJ's opinion with citations to an October 2016 examination in which plaintiff walked without a limp and had normal motor function. Def.'s Br. 4 (citing Tr. 867). The ALJ and Commissioner concluded that the plaintiff "retained significant physical functioning despite his back symptoms." Tr. 26.

Although this evidence suggests that plaintiff had periods of greater strength and functionality, it does not address the periods during which he did not. The resulting error is reversible because proper evaluation of plaintiff's flaring symptoms in the RFC may have altered the outcome at step five.

B.    *Plaintiff's Subjective Symptom Testimony*

The ALJ makes a credibility determination to assess the subjective symptom testimony of a claimant amidst a two-step process. First, the ALJ evaluates the

existence of an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms. Second, the ALJ addresses the intensity, persistence, and limiting effects of the alleged symptoms based on an examination of the entire record. 20 C.F.R §§ 404.1529(a), (c)(l); 416.929(a), (c)(l); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

When a claimant's medically determinable impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of her symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039. However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

Here, the ALJ discounted plaintiff's "statements concerning intensity, persistence, and limiting effects of [symptoms from his medically determinable impairments]." Tr. 25. The Commissioner argues that the ALJ gave clear and convincing reasons supported by substantial evidence. Def.'s Br., 7-9.

The ALJ erred in discounting plaintiff's testimony on his physical symptoms for the reasons addressed in the foregoing sections. Additionally, plaintiff is correct that the ALJ also erred by discounting plaintiff's pain testimony based solely on objective medical evidence. The extent to which the ALJ may have erred in discounting plaintiff's testimony about his psychological symptoms is obscured by errors in the in the evaluation of plaintiff's VA assessments and social functioning. The Court will address those errors below.

C.    *VA Disability Rating and C&Ps*

"An ALJ must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

In 2012, the VA assessed plaintiff's disability rating at 60%, which qualifies as disabled.  Tr. 466.  Plaintiff had additional C&Ps in 2014 which did not alter his rating.  *Id*. at 586-633.

Plaintiff argues that the ALJ erred by discounting all the VA's disability-related findings without explanation beyond noting that the VA, unlike the SSA, resolves doubt in favor of the applicant.  Pl.'s Op. Br., 19 (quoting *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685 (9th Cir. 2009) ("Insofar as the ALJ distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey*.")).  The Court agrees.

The Commissioner argues that the ALJ's discussion of improvement adequately addressed the VA disability findings.  Errors in the Commissioner's general narrative of improvement discussed in previous sections make this argument unavailing.  This error would have been harmless if not for the discrepancy regarding the ALJ's findings on social functioning discussed below.

D.    *Social Functioning*

Here, plaintiff notes, and the Commissioner concedes, that a discrepancy between the ALJ's social functioning findings and the RFC constituted legal error.  At step two, the ALJ found that plaintiff had moderate limitation in interacting with others.  Tr. 23.  In the RFC analysis, the ALJ discussed that plaintiff's PTSD symptoms had improved but noted that the VA's global assessment score of fifty suggested serious impairment of occupational and social functioning.  *Id*. at 26-27.  To reconcile the two, the ALJ found that plaintiff should be restricted "to work

settings that involve no more than occasional social interaction." *Id*. at 27.  However, the RFC inconsistently specified that plaintiff is capable of "no more than frequent interactive contact with co-workers, supervisors, or the general public." *Id*. at 24. The ALJ's hypothetical to the VE at step five repeated this inconsistency by reflecting the RFC. *Id*. at 69.

The Commissioner contends that the error was harmless because the Dictionary of Occupational Titles ("DOT") indicates that one of the positions identified by the VE, price marker, does not involve significant social interaction with others.  Def.'s Br., 11 (citing DOT #209.587-034, *available at* 1991 WL 671802 (rev. ed. 1991)).  The DOT specifically notes that requirements under "Taking Instructions-Helping" are "Not Significant."  Plaintiff cites to O*Net, a database of occupational information, which describes price markers as having "near constant contact with others."  Pl.'s Rep. Br., 6-7.  Further proceedings are necessary to resolve the discrepancies in the findings and pose amended hypotheticals to a VE if necessary.

E.    *Concentration, Persistence, and Pace*

Plaintiff contends that the ALJ improperly limited plaintiff to unskilled work without also considering concentration persistence, and pace.  Tr. 21-22.  The Commissioner responds that an ALJ may rely on state agency psychologists to translate moderate limitations in concentration, persistence, and pace into work-related limitations.  Def.'s Br. 12 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).  The Commissioner also properly notes that plaintiff failed to cite any contrary binding authority.  *Id*.  Further, the state psychologists here found only mild

limitation in concentration, persistence, and pace and plaintiff has failed to explain how the outcome would have differed had the ALJ addressed these opinions. Accordingly, the Court finds no error in this finding.

III.    *Scope of Remand*

The Ninth Circuit precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Under the three-prong "credit-as-true" doctrine, the reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5. 2016). Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (quotation marks omitted). Third, if the court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id*. (quotation marks omitted). Additionally, even if all three of the foregoing primary elements are met, courts can still remand for further proceedings if the record as a whole "creates serious doubt" about whether a claimant is disabled as a matter of law. *Id*.

Here, prong one of the credit-as-true analysis is met because the ALJ made four harmful legal errors. First, the ALJ lacked substantial evidence in the RFC finding to the extent that plaintiff's waxing and waning symptoms were not

addressed. Second, the ALJ lacked clear and convincing reasons supported by substantial evidence for discounting plaintiff's testimony regarding the impact of his back and leg pain. Third, the harmfulness of the ALJ's discounting of the VA disability and C&P findings without sufficient explanation cannot be properly evaluated due to the discrepancies in the ALJ's treatment of plaintiff's social functioning. Fourth, there were discrepancies between the ALJ's analysis of plaintiff's social functioning, the RFC, and step five hypotheticals to the VE. Each error has the potential to alter the RFC and, in turn, the step five determination of whether there is employment available to plaintiff. Absent sufficient reasons to discount plaintiff's pain testimony, it is given weight, including plaintiff's assertion that he is confined to his bed for half of the day for six to seven days each month. Thus, the first step is met.

At prong two, however, the record is not fully developed or free from conflicts and ambiguities. For example, the ME's testimony was equivocal, ambiguous, and called into question the RFCs of the state non-examining physicians. Together with medical and testimonial evidence of plaintiff's waxing and waning symptoms, there remains an open factual question as to plaintiff's ability to work on a regular and continuing basis. Accordingly, remand for further proceedings is the appropriate remedy.

On remand, the ALJ shall reevaluate medical evidence of plaintiff's waxing and waning symptoms and revise the RFC with legally sufficient reasoning. The ALJ shall also reevaluate plaintiff's pain symptom testimony and either credit it as true

or revise the RFC accordingly.  The ALJ must also clarify the findings regarding plaintiff's social functioning to create consistency between each step and amend the reasoning for discounting the VA findings if necessary.  Additionally, if the ALJ cannot furnish legally sufficient reasons, the ALJ shall obtain supplemental VE evidence regarding the impact of plaintiff waxing and waning pain symptoms on his ability to work on a regular and continuing basis.

## CONCLUSION

The Commissioner's decision that plaintiff is not disabled is REVERSED and the case is REMANDED for further proceedings consistent with this opinion. Accordingly, this action is dismissed.

IT IS SO ORDERED.

Dated this  31st  day of March 2021.


_____/s/Ann Aiken_____
Ann Aiken
United States District Judge